COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-06-187-CV

JUDY ALLEN, INDEPENDENT ADMINISTRATRIX APPELLANTS

OF THE ESTATE OF MARVIN FRED ALLEN

AND INDIVIDUALLY AS THE SURVIVING 

SPOUSE, AND MICHAEL ALLEN AND CORY

ALLEN, INTERVENORS

V.

UNITED OF OMAHA LIFE INSURANCE COMPANY, APPELLEES

THOMAS PACE, STEVEN ANDERSON, ALAN 

CURRY, WORLDWIDE RESOURCES, INCORPORATED, 

RICHARD R. MURPHEY, JR., AND CREDITWATCH 

SERVICES, LTD., AS SUCCESSOR IN INTEREST 

TO CREDITWATCH SERVICES, LLC

AND

UNITED OF OMAHA LIFE INSURANCE COMPANY APPELLANT

V.

CREDITWATCH SERVICES, LTD., AS SUCCESSOR APPELLEE

IN INTEREST TO CREDITWATCH SERVICES, LLC

------------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY

------------

OPINION

------------

This is a dispute over the proceeds of a key man life insurance policy.  The principal question before us is this:  When a policy’s named beneficiary merges with another entity, and the other entity is the “surviving company,”  are the policy proceeds payable to the surviving company?  We answer in the affirmative, and we affirm the trial court’s judgment.

I. Background

Appellant Judy Allen is the widow of Marvin Fred Allen, and Appellants Michael Allen and Cory Allen are his sons.  In 2001, Fred was the CEO of CreditWatch Services, L.P. and the president of CreditWatch Services, L.P.’s general partner, Stoneleigh Financial L.L.C.  CreditWatch Services, L.P. purchased a “key man” life insurance policy on Fred’s life in the amount of $1 million from United of Omaha Life Insurance Company (“United”).  Fred signed the application in his individual capacity as the proposed insured, and he signed it in his capacity as president of Stoneleigh as the policy’s applicant/owner.  In the application, he designated CreditWatch Services, L.P. as the policy’s sole beneficiary. 

In June 2002, CreditWatch Services, L.P. merged with CreditWatch Services, Ltd., an Ohio limited company.  The merger agreement and certificate of merger specified that the surviving entity was CreditWatch Services, Ltd.  CreditWatch Services, Ltd. later changed its name to CreditWatch Services LLC. The insurance policy’s beneficiary designation was never changed from CreditWatch Services, L.P. 

Fred died of natural causes on December 25, 2002.  In September 2003, United issued a check payable to “CreditWatch Services” for the policy proceeds.  CreditWatch Services LLC deposited the check into one of its accounts. 

In December 2004, Judy Allen sued United; Thomas Pace, the insurance agent who sold the policy; Steven Anderson, the CEO of CreditWatch Services LLC;  Richard Murphey, CreditWatch Services LLC’s attorney; Worldwide Resources, Inc., a firm that investigated Fred’s death for United; and Alan Curry, an employee of Worldwide.
(footnote: 1)  Judy sued United for paying the policy proceeds to “CreditWatch Services,” Pace for negligence, and all of the defendants for tortious interference with an inheritance and conspiracy to commit fraud.  Michael and Cory later intervened in the lawsuit as plaintiffs. 

All defendants moved for summary judgment, and the trial court ultimately granted summary judgment on all causes of action.
(footnote: 2)  Judy, Michael, and Cory (“Appellants”) filed this appeal.  In ten issues, they complain that the trial court erred by granting summary judgment because the policy’s named beneficiary ceased to exist before Fred died and because the named beneficiary had no insurable interest in Fred’s life (issues 1, 2, and 3); the trial court abused its discretion by striking Judy’s summary judgment affidavit without allowing her an opportunity to correct any deficiencies in the affidavit (issues 4, 5, and 6); the trial court abused its discretion by overruling Judy’s motion to compel discovery from Anderson, Murphey, Pace, and United (issue 7); the trial court abused its discretion by denying Judy’s motion for continuance (issue 8); the trial court abused its discretion by denying Judy’s motion for a discovery control plan (issue 9); and the trial court erred by denying Judy’s motion to disqualify counsel for Havens and Anderson (issue 10).

II. Discussion

A. Summary Judgment

In their first three issues, Appellants argue that the trial court erred by granting summary judgment in favor of Appellees.  Appellants contend that United should have paid the insurance proceeds to Fred’s estate because the policy’s designated beneficiary, CreditWatch Services, L.P., ceased to exist after its merger with CreditWatch Services, Ltd. and because CreditWatch Services, Ltd. had no insurable interest in Fred’s life at the time of his death.

1. Standard of Review

A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.  
IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason
,
 
143 S.W.3d 794, 798 (Tex. 2004); 
see
 
Tex. R. Civ. P.
 166a(b), (c).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  
IHS Cedars Treatment Ctr.
, 143 S.W.3d at 798. 

2. 
Effect of Merger on Beneficiary Designation

In their second issue, Appellants argue that after CreditWatch Services, L.P. merged with CreditWatch Services, Ltd., CreditWatch Services, L.P. ceased to exist.  CreditWatch Services, L.P. was the policy’s designated beneficiary, and the designation was never changed.  Appellants contend that because the policy’s designated beneficiary did not exist when Fred died, United should have paid the policy proceeds to Fred’s estate.  Appellees argue that CreditWatch Services, L.P.’s rights as beneficiary were transferred to CreditWatch Services, Ltd. as a result of the merger, and no change in the beneficiary designation was required.

Some Texas cases describe a beneficiary’s right to receive life insurance proceeds payable at a future but uncertain date as “property” in the nature of an unmatured chose in action
(footnote: 3) that matures at the death of the insured.  
See Brown v. Lee
, 371 S.W.2d 694, 696 (Tex. 1963); 
Seaman v. Seaman
, 686 S.W.2d 206, 211 (Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.)
; Prudential Life Ins. Co. v. Burke
, 614 S.W.2d 847, 849 (Tex. Civ. App.—Texarkana), 
writ ref’d n.r.e.
, 621 S.W.2d 596 (Tex. 1981)
.  Other cases describe the beneficiary’s interest as an expectancy that matures into a vested interest upon the death of the insured.  
See Hunt v. Jefferson-Pilot Life Ins. Co.
, 900 S.W.2d 453, 456 (Tex. App.—Fort Worth 1995, writ denied); 
see also Garabrant v. Burns
, 130 Tex. 518, 111 S.W.2d 1100, 1103 (1938).

Both choses in action and expectancies are conveyable interests under Texas law.  
See
 
PPG Indus., Inc. v. JMB/Houston Ctrs. Partners Ltd. P’ship, 
 146 S.W.3d 79, 106 (Tex. 2004) (tracing development of modern law allowing transfer of choses in action); 
Parker v. Blackmon
, 553 S.W.2d 623, 624 (Tex. 1977) (“[T]he effective conveyance of . . . an expectant interest is clearly permissible.”).  Thus, regardless of whether we characterize CreditWatch Services, L.P.’s interest in Fred’s life insurance policy as a chose in action or an expectancy, the interest was transferable, and the question is whether the merger effectively transferred that interest to CreditWatch Services, Ltd.

Under the merger agreement between CreditWatch Services, L.P. and CreditWatch Services, Ltd., CreditWatch Services, L.P. was merged into CreditWatch Services, Ltd., and CreditWatch Services, Ltd. was the surviving company.  The merger agreement stated that the merger was being completed under § 1705.36 of the Ohio Revised Code and article 6132a, § 2.11 of the Texas Limited Partnership Act.  The agreement provided as follows:

Effect of Merger
.  Upon the Effective Date, the separate existence of the Merging Partnership shall cease, and the Merging Partnership shall be merged into the Surviving Company in accordance with this agreement, and the Surviving Company shall continue unaffected and unimpaired by the merger,
 with all of the rights
, privileges, immunities, powers and purposes,
 and all of the property, real and personal, causes of action and every other asset of the Merging Partnership
, and shall assume and be liable for all of the liabilities, obligations and penalties of the Merging Partnership, all in accordance with section 1705.39 of the Ohio Revised Code and article 6132a, section 2.11 of the Texas Revised Limited Partnership Act. [Emphasis added.] 

The language of the merger agreement was entirely consistent with Texas and Ohio law regarding mergers.  The Texas Limited Partnership Act provides that when a merger occurs,

all rights, title, and interests to all real estate and property owned by each domestic or foreign limited partnership and by each other entity that is a party to the merger shall be allocated to and vested in one or more of the surviving or resulting entities as provided in the plan of merger without revision or impairment, 
without further act or deed, and without any transfer or assignment having occurred
, but subject to any existing liens or other encumbrances thereon; . . . .

Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 2.11(g)(2) (Vernon Supp. 2006) (emphasis added).  Similarly, the Ohio Revised Code provides:

The surviving or new entity possesses all assets and property of every description, and every interest in the assets and property, wherever located, and the rights . . . of each constituent entity . . . 
all of which are vested in the surviving or new entity without further act or deed.

Ohio Rev. Code Ann.
 § 1701.82(A)(3) (West 2007) (emphasis added); 
see also
 
 TXO Production Co. v. M.D. Mark, Inc.
, 999 S.W.2d 137, 142 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (noting that Texas and Ohio merger statutes are worded essentially the same and automatically vest all interests of the merging entity in the surviving entity).

Thus, under the express terms of the merger agreement, as well as under the relevant Texas and Ohio statutes, all of CreditWatch Services, L.P.’s rights and interests automatically vested in CreditWatch Services, Ltd. without the need for further act or deed.  Because CreditWatch Services, L.P.’s rights as beneficiary of Fred’s life insurance policy—whether we characterize those rights as an unmatured chose in action or an expectancy interest—were transferable, those rights, too, vested in CreditWatch Services, Ltd. without the need for further act or deed.

Appellants argue that CreditWatch Services, L.P. could not convey its rights as the policy’s beneficiary to CreditWatch Services, Ltd. because CreditWatch Services, L.P. was merged out of existence and its rights as beneficiary were merged out of existence, too.  Appellants analogize CreditWatch Services, L.P. to a natural person who is the beneficiary of a life insurance policy but who dies before the death of the insured life, thus extinguishing the natural person’s rights as beneficiary.

Appellants’ analogy fails because merger is not the corporate equivalent of natural death.  One court has described merger in the following eloquent terms:

[T]he consolidation of two or more corporations is like the uniting of two or more rivers, neither stream is annihilated, but all continue in existence.  A new river is formed, but it is a river composed of the old rivers, which still exist, though in a different form.  So it is with a consolidated corporation.

Atlanta Newspapers, Inc. v. Doyal
, 65 S.E.2d 432, 437 (Ga. App. 1951) (quoting 
Atlantic & Birmingham Ry. Co. v. Johnson
, 56 S.E. 482, 484 (Ga. 1907)).  This poetical description is entirely consistent with both the Texas and Ohio merger statutes, which provide that all rights and obligations of the merging entity continue to exist in the surviving entity.  
See
 
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 2.11(g)(2); 
Ohio Rev. Code Ann.
 § 1701.82(A)(3).  Article 6132a-1 also provides that “when a merger takes effect . . . the 
separate
 existence of every domestic limited partnership that is a party to the merger, except any surviving or new domestic limited partnership, shall cease.”  
Tex. Rev. Civ. Stat. Ann.
 art. 6132a-1, § 2.11(g)(1) (emphasis added).  While CreditWatch Services, L.P.’s separate existence ceased at the time of the merger, all of its rights and obligations lived on in CreditWatch Services, Ltd.  
See Bailey v. Vanscot Concrete Co.
, 894 S.W.2d 757, 759 (Tex. 1995) (“In a merger, the privileges, powers, rights, and duties of the corporation are transferred to the surviving corporation and are there continued and preserved.”)

 We hold that CreditWatch Services, L.P.’s rights as the life insurance policy’s beneficiary vested in CreditWatch Services, Ltd. when the two entities merged.  We therefore overrule Appellants’ second issue.

3. Insurable Interest

In their third issue, Appellants argue that CreditWatch Services, Ltd. had no insurable interest in Fred’s life at the time of his death because he was no longer employed by or associated with CreditWatch Services, L.P. or its successors.  We disagree.

Under the common law, the designated beneficiary of a life insurance policy must have an insurable interest in the insured’s life when the policy is issued and when the insured dies.  
Torrez v. Winn-Dixie Stores, Inc.
, 118 S.W.3d 817, 820 (Tex. App.—Fort Worth 2003, pet. dism’d).  Two policies drive this rule:  A practice that encourages one to take another’s life should be prohibited, and no one should be permitted to wager on the life of another.  
Id.

While the insurable-interest rule is still followed by Texas courts, the Texas legislature has enlarged the class of persons deemed to have an insurable interest.  
Stillwagoner v. Travelers Ins. Co.
, 979 S.W.2d 354, 358-59 (Tex. 1998).  Under the Texas Insurance Code, an individual may apply for a life insurance policy and designate as beneficiary 
any
 individual, partnership, association, or corporation.  
Tex. Ins. Code Ann.
 § 1103.054 (Vernon Supp. 2006).  An individual may also consent in writing to the purchase of a policy on his life by a third person and to the designation of 
any
 individual, partnership, association, or corporation as beneficiary.  
Id.
 § 1103.056.  Thus, the legislature has conferred an insurable interest on those persons named by an insured as beneficiaries in a policy on his own life and on those named by a person to whom the insured has granted the power to make such a designation.  
See Stillwagoner
, 979 S.W.2d at 358.  A beneficiary who is designated in accordance with sections 1103.054 or 1103.056 has, at all times after the designation, an insurable interest in the life of the individual who is insured under the policy.  T
ex. Ins. Code Ann.
 § 1103.053 (Vernon Supp. 2006).

In this case, Fred himself signed the insurance application, once individually as the proposed insured, and again as president of the applicant/owner, and he designated CreditWatch Services, L.P. as the sole beneficiary.  Thus, Fred designated CreditWatch Services, L.P. as the beneficiary in accordance with insurance code sections 1103.054 and 1103.056, and CreditWatch Services, L.P. had an insurable interest in his life at all times thereafter under section 1103.053.

Appellants cite insurance code section 1103.004 for the proposition that a partnership has an insurable interest only in the life of a member of the partnership and argue that because Fred was not a member of CreditWatch Services, L.P., CreditWatch Services, L.P. had no insurable interest in his life.  Section 1103.004 provides that “[a] partnership or a member of the partnership may be designated as a beneficiary in a policy that insures the life of a member of the partnership.”  
Id.  §
 1103.004.  That section appears under Chapter 1103, Subchapter A, titled “Statutory Life Insurance Beneficiaries; Insurable Interest.”  Subchapter A confers insurable interests on several types of organizations in the lives of their officers, stockholders, and members.  
Id.
 §§ 1103.003 (conferring insurable interest to corporations in the lives of their officers and stockholders); 1103.004 (conferring insurable interest to partnerships in the lives of their members).  Sections 1103.053 through 1103.056, on the other hand, appear under Subchapter B, titled “Designation of Beneficiary or Owner of Life Insurance Policy; Insurable Interest.”

Simply put, subchapter A creates one method of conferring an insurable interest, and subchapter B creates another.  Subchapter A confers insurable interests to entities in the lives of their officers, stockholders, and members 
without the consent of the insured life
, while Subchapter B confers an insurable interest 
on any person designated as a beneficiary by the insured
 
life.  
Sections 1103.054 and 1103.056 allow a person to designate “
any
 individual, partnership, association, or corporation” as beneficiary of a life insurance policy, and nothing in the code suggests that section 1103.004 limits “any . . . partnership” to partnerships of which the insured life is a member.

Appellants also argue that, despite the enactment of sections 1103.054 and 1103.056, Texas courts have consistently held that a beneficiary must have an insurable interest in the insured life.  We agree, and we do not hold otherwise today.  As the supreme court noted in 
Stillwagoner
, Texas law requires an insurable interest, but the legislature has enlarged the class of persons considered to have an insurable interest.  
See Stillwagoner
, 979 S.W.2d at 358-59. 
 Insurance code sections 1103.054 and 1103.056 enlarged the class of persons considered to have an insurable interest to include any partnership designated as a beneficiary by the insured or by a person to whom the insured gave the power to make such a designation.  In this case, Fred, the insured, designated CreditWatch Services, L.P. as the sole beneficiary; thus, CreditWatch Services, L.P. had an insurable interest in his life when he executed the beneficiary designation and, under section 1103.053, at all times thereafter.

We hold that as a matter of law, CreditWatch Services, L.P. had an insurable interest in Fred’s life, and we overrule Appellants’ third issue.  Having overruled Appellants’ second and third issues, we also overrule their first issue, in which they complain generally that the trial court erred by granting summary judgment.

B. Judy Allen’s Affidavit

In her fourth, fifth, and sixth issues,
(footnote: 4) Judy argues that the trial court abused its discretion by sustaining Appellees’ objections to her summary judgment affidavit and striking the affidavit without giving her an opportunity to correct any deficiencies in it.  Judy contends that Appellees’ objections were untimely, parts of the affidavit were unobjectionable, and the trial court should have allowed her to cure the deficiencies objected to by Appellees.

Judy’s affidavit states that “[t]his affidavit is given regarding the status of Fred’s employment at the date of his death on December 25, 2002,” and most of the affidavit relates to Fred’s relationship to the various CreditWatch  entities.  In her response to Appellees’ motions for summary judgment, Judy referred to her affidavit twice, both times to support the assertion that Fred was not an employee of and did not have any financial interest in CreditWatch Services, L.P. or its successors or assigns at the time of his death, as a part of her attempt to show that CreditWatch Services, L.P. had no insurable interest in Fred’s life.  Appellants carry forward the same reference to Judy’s affidavit, for the same purpose, in their brief in this court. 

Appellee Anderson filed written objections to Judy’s affidavit on February 21, 2004—the day before the hearing on Appellees’ motions for summary judgment.  Appellees Pace and United adopted Anderson’s objections in writing on February 22, and the other Appellees orally adopted Anderson’s objections at the summary judgment hearing.  The trial court sustained the objections and struck Judy’s affidavit in its entirety. 

To obtain reversal of a judgment based upon an error in the trial court, the appellant must show that the error probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court.  T
EX
. R. A
PP
. P. 44.1(a); 
Romero v. KPH Consolidation
,
 Inc.
, 166 S.W.3d 212, 220 (Tex. 2005).  We will not reverse a trial court’s judgment because of an erroneous evidentiary ruling unless the ruling probably caused the rendition of an improper judgment.  
Horizon/CMS Healthcare Corp. v. Auld
, 34 S.W.3d 887, 906 (Tex. 2000); 
Owens-Corning Fiberglas Corp. v. Malone
, 972 S.W.2d 35, 43 (Tex. 1998).  The complaining party must usually show that the whole case turned on the evidence at issue.  
City of Brownsville v. Alvarado
, 897 S.W.2d 750, 753-54 (Tex. 1995).  We examine the entire record in making this determination of harm.  
Interstate Northborough P’ship v. State
, 66 S.W.3d 213, 220 (Tex. 2001).

The gist of Judy’s affidavit, and the only purpose for which she cited it in her summary judgment response, is that Fred did not have a relationship with any CreditWatch entity at the time of his death and, therefore, that no CreditWatch entity had an insurable interest in his life.  We have already held as a matter of law that CreditWatch Services, L.P. acquired an insurable interest in Fred’s life when he designated the partnership as beneficiary of the life insurance policy and at all times thereafter.  Therefore, Fred’s relationship to the CreditWatch entities at the time of his death is wholly irrelevant to the insurable-interest question, and Judy’s testimony about his relationship is likewise irrelevant.  In no sense did the whole case turn on Judy’s excluded testimony.

Thus, even assuming that the trial court abused its discretion by sustaining the objections, striking the affidavit in its entirety, and not giving Judy an opportunity to correct the affidavit’s deficiencies, the error was harmless.  We overrule Appellants’ fourth, fifth, and sixth issues.

C. Motion to Compel

In her seventh issue, Judy argues that the trial court abused its discretion by denying her motion to compel responses from Appellees United, Pace, Murphey, and Anderson to her discovery requests.  We review a trial court’s discovery orders under the abuse of discretion standard.  
TransAmerican Natural Gas Corp. v. Powell
, 811 S.W.2d 913, 917 (Tex. 1991). 

In her brief, Judy contends that Appellees waived their claims of privilege to various discovery requests by failing to produce privilege logs as required by rule 193.3.  
See 
Tex. R. Civ. P.
 193.3(
b).  She also states that “[i]n an attempt at brevity, [she] will not go into lengthy detail as to every other discovery error committed by the trial court, but will refer this Court to her motion, proof and arguments on pages 686-704 . . . of the clerk’s record and the [156 pages of] exhibits attached thereto.”  A claim of error on appeal must be argued in the party’s brief; it is insufficient simply to refer the appellate court to the party’s trial court arguments.  
Guerrero v. Tarrant County Mortician Servs. Co.
, 977 S.W.2d 829, 832-33 (Tex. App.—Fort Worth 1998, pet. denied) (“Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party’s trial court arguments.  Additionally, this would be an open door for parties to circumvent the appellate brief page limitations.”).  Therefore, we will consider only the specific argument raised in Judy’s brief.

We have reviewed the relevant discovery requests and responses, paying particular attention to those responses where Appellees asserted privileges. Whenever Appellees asserted a privilege to a discovery request, they also asserted other objections, such as objections that the request was vague, ambiguous, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. 

Even assuming that Appellees waived their claims of privilege by failing to produce privilege logs under rule 193.3(b), we cannot say that the trial court abused its discretion by denying Judy’s motion to compel because her brief on appeal does not address the other objections posed by Appellees.  Therefore, we overrule her seventh issue.

D. Motion for Continuance and Motion for Discovery Control Plan

In her eighth issue, Judy argues that the trial court erred by denying her motion for continuance of the summary judgment hearing.
(footnote: 5)  She contends that she did not have adequate time for discovery before the summary judgment hearing as required by rule 166a(i).  Whether the trial court grants or denies a motion for continuance is within its sound discretion. 
 See
 
BMC Software Belg., N.V. v. Marchand
, 83 S.W.3d 789, 800 (Tex. 2002).  

We first note that Judy’s citation to rule 166a(i) is inapposite.  Appellees filed traditional motions for summary judgment under rule 166a(c), not no-evidence motions under rule 166a(i).  Thus, rule 166a(i) and its “adequate time for discovery” provision do not apply.

Second, Judy argues that adequate time for discovery had not yet occurred because of Appellees’ dilatory discovery tactics, but she does not explain how Appellees abused the discovery process or identify what information relevant to the summary judgment issues Appellees withheld.  The mere accusation that a party abused the discovery process is not sufficient to justify overturning the trial court’s ruling on a motion to continue a summary judgment hearing.  
Specialty Retailers, Inc. v. Fuqua,
 29 S.W.3d 140, 146 (Tex. App.—Houston [14 Dist.] 2000, pet. denied).

We now turn to the procedural time line leading up to the summary judgment hearing.  Judy filed suit on December 17, 2004.  The trial court heard Appellees’ motions for summary judgment on February 22, 2006, over a year later.  
In her original and subsequent petitions, Judy stated that discovery would be conducted under a level 3 discovery control plan.  But “[t]he initial pleading required by Rule 190.1 is merely to notify the court and other parties of the plaintiff’s intention; it does not determine the applicable discovery level or bind the court or other parties.”  
Tex. R. Civ. P.
 190 cmt. 1.  Thus, despite pleading an intention to proceed under level 3, a case can be designated level 3 only by court order.  
Id.  
When the trial court does not sign an order adopting a level 3 discovery control plan, the default discovery limitations of levels 1 or 2 apply.  
Tex. R. Civ. P.
 190.4(b).  The discovery period under level 2 ends nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery.  
Tex. R. Civ. P.
 190.3(b)(1)(B)(ii).

Judy did not  move the court to enter a discovery control order until after Appellees filed their motions for summary judgment, and the trial court denied her motion.  Therefore, the case was subject to the default level 2 discovery control deadlines, and the discovery period ended nine months after the due date of the first written discovery response. 

The first discovery response was due in this case on February 11, 2005. Thus, the default level 2 discovery period ended on November 11, 2005—a week before United filed the first summary judgment motion and three months before the summary judgment hearing.  In the affidavit filed in support of Judy’s motion for continuance, her attorney cited the need for deposition testimony as a justification for a continuance, but it does not appear that Judy requested any depositions in the fourteen months between the date she filed suit and the summary judgment hearing.  Under these circumstances, we cannot say that the trial court abused its discretion by denying Judy’s motion for continuance, and we overrule her eighth issue.

In her ninth issue, Judy argues that the trial court erred by denying her motion to enter a level 3 discovery control plan.  The rule addressing level 3 discovery control plans states that “[t]he court 
must
, on a party’s motion, . . . order that discovery be conducted in accordance with a discovery control plan tailored to the circumstances of the specific suit.”  
Tex. R. Civ. P.
 190.4(a) (emphasis added).  While the rule states that the court “must” enter a level 3 scheduling order on a party’s motion, it does not require that the order provide deadlines different from those under a level 2 case; even under a level 3 scheduling order, the level 2 deadlines continue to apply “unless specifically changed in the discovery control plan ordered by the court.” 
 Tex. R. Civ. P.
 190.4(b).  That decision is left to the trial court’s discretion: “The discovery control plan ordered by the court . . . 
may
 change any limitation on the time for . . . discovery set forth in these rules.”  
Id.
 (emphasis added).

Because the rules give the trial court discretion under a level 3 order to determine what deadlines to apply and because we have already determined that the trial court did not abuse its discretion by denying Judy’s motion for continuance to conduct more discovery, we conclude that the trial court did not abuse its discretion by granting the motions for summary judgment without first entering a level 3 discovery control order.  
See Branum v. Nw. Tex. Healthcare Sys., Inc.
, 134 S.W.3d 340, 341 (Tex. App.—Amarillo 2003, pet. denied) (holding trial court did not abuse discretion by granting summary judgment before entering level 3 discovery control order); 
Baize v. Scott & White Clinic
, No. 03-05-00780-CV, 2007 WL 135956, at *9 (Tex. App.—Austin January 22, 2007, pet. denied) (same).  We overrule Judy’s ninth issue.

E. Disqualification of Counsel

In her tenth and final issue, Judy argues that the trial court erred by denying her motion to recuse the Jackson Walker law firm from representing defendants Anderson, Havens, and CreditWatch Services, Ltd. because a former Jackson Walker partner, Richard Goodner, counseled Fred in the formation of various entities, including CreditWatch Services, L.P.  We review a trial court’s ruling on a motion to disqualify for an abuse of discretion.
  Metro. Life Ins. Co. v. Syntek Fin. Corp.
, 881 S.W.2d 319, 321 (Tex. 1994).

As she did in her seventh issue, Judy attempts to incorporate by reference the arguments presented in her trial court motion.  For the reasons we stated in our discussion of her seventh issue, we will consider only the specific arguments made in her appellate brief.

Judy sought to disqualify Jackson Walker under disciplinary rules 1.09 and 3.08.  Rule 1.09 provides that a lawyer shall not take a representation that is adverse to a former client if the new matter “is the same or a substantially related matter.”
  Tex. Disciplinary R. Prof’l. Conduct
 1.09(a)(3), 
reprinted in
 
Tex. Gov’t Code Ann.
, tit. 2, subtit. G. (Vernon Supp. 2006) (
State Bar R
. art. X, § 9).  Rule 3.08 provides that a lawyer shall not continue or accept employment as an advocate before the tribunal if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer’s client.  
Id.
 3.08(a).

Judy argues that Jackson Walker had a conflict of interest by representing clients adverse to the entities Goodner helped Fred to create.  But Judy does not explain how the clients Jackson Walker represented in this case—Anderson, Havens, and CreditWatch Services, Ltd.—were adverse to CreditWatch Services, L.P.  Indeed, it appears that while those clients were adverse to 
Judy
, they were aligned with CreditWatch Services, L.P, especially because CreditWatch Services, Ltd. contended that it was entitled to the insurance proceeds as survivor of the CreditWatch merger and successor to CreditWatch Services, L.P.  Nor does Judy explain how Jackson Walker violated rule 3.08.

We therefore hold that the trial court did not abuse its discretion by denying Judy’s motion to disqualify Jackson Walker, and we overrule her tenth issue.

III. Conclusion

We do not reach United’s cross-issues against CreditWatch Services, Ltd., which were contingent upon the reversal of the trial court’s summary judgments.  Having overruled all of Appellants’ issues, we affirm the trial court’s judgment.  We deny Worldwide’s “Motion for Damages for Frivolous Appeal.”

ANNE GARDNER

JUSTICE

PANEL B: HOLMAN, GARDNER, and WALKER, JJ.

DELIVERED: May 17, 2007 

FOOTNOTES
1:
Judy also sued John F. Havens and the City of Arlington.  The trial court granted Havens’s special appearance,
 see
 
Allen v. Havens
, No. 02-05-00318-CV, 2007 WL 805477, at *1 (Tex. App.—Fort Worth March 15, 2007, no pet. h.), and granted Arlington’s plea to the jurisdiction. 

2:
Except for Appellants’ claim for quantum meruit against CreditWatch Services, Ltd., which was severed into a new cause number.   

3:
A chose in action is a right to bring an action to recover a debt, money, or thing.  
Black’s Law Dictionary
 (8th ed. 2004)

4:
The fourth through tenth issues pertain only to Appellant Judy Allen. 

5:
This issue does not pertain to Appellees Worldwide and CreditWatch Services, Ltd., both of which filed their motions for summary judgment after the date of the hearing related to Judy’s motion for continuance.