

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00153-CV

IN THE INTEREST OF F.M.B. AND
P.W.B., CHILDREN

----------

FROM THE 322ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant D.J.B. (Father),[2] pro se, appeals the trial court's order in this

post-divorce modification and enforcement suit. Father raises four issues. First,

Father contends the trial court abused its discretion by denying Father's motion

---

[1]*See* Tex. R. App. P. 47.4.

[2]We use aliases to protect the identities of the individuals involved in this case. *See* Tex. R. App. P. 9.8 cmt.; *see also* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2013).

for continuance of the hearing on a motion to sign final orders filed by Appellee J.M.B. (Mother) and by denying his motions seeking additional discovery. Second, Father claims the trial court erred by issuing a final protective order based upon a finding of a history of family violence. Third, Father complains the trial court abused its discretion in its calculation and division of the parties' assets and liabilities and in its calculation of child support, medical expenses, health insurance reimbursements, and attorney's fees. Fourth, Father asserts the trial court erred in its valuation and division of two Charles Schwab IRAs owned by Mother and Father during their marriage. We affirm.

## I. Factual and Procedural Background

Mother and Father were divorced on June 7, 2007. The final decree was signed on June 5, 2008. The decree appointed Mother and Father as joint managing conservators of F.M.B. (Franklin) and P.W.B. (Phillip), the two children from the marriage. The decree also ordered Father to maintain health insurance for Franklin and Phillip and to make monthly child support payments of $1,500.00. The decree further provided that Mother and Father would equally share the expenses incurred on behalf of Franklin and Phillip for their extracurricular activities.

The decree also divided the marital estate, including two Charles Schwab IRAs. The decree awarded fifty percent of one IRA to each party and 33.33 percent of the other IRA to Mother and 66.66 percent to Father. The decree also

2

specified that the parties were to divide the IRAs by stock cost basis, if applicable. Neither Mother nor Father appealed the final decree.

In October 2008, Father filed a motion to modify the decree, asking the court to decrease his child support obligation and to modify the decree with respect to certain uninsured medical expenses related to counseling between Father and Phillip. In September 2009, Father filed a petition to enforce the property division set out in the decree, complaining that Mother failed to surrender to Father the boat, the items of personal property, and the family photographs and videos awarded to him. Father also claimed Mother failed to execute real estate documents necessary to effectuate the terms of the decree. He further complained that the two Charles Schwab IRAs had not been divided in accordance with the decree and requested that the court appoint an accountant to determine each party's interest therein.

In response, Mother filed a counter-petition, requesting the court enforce Father's obligations under the decree to pay half of Franklin's and Phillip's unreimbursed medical expenses, to provide health insurance for Franklin and Phillip or to reimburse Mother if she provided health insurance for them, and to pay half of the expenses related to Franklin's and Phillip's extracurricular activities.

On May 2, 2010, Father placed a box addressed to Mother containing a bomb on the front porch of Mother's residence. Father pled guilty to the offense of possession of an unregistered destructive device. On November 1, 2010,

3

Father was sentenced to 120 months in federal prison and was ordered to pay a fine in the amount of $10,000.00. As a result of Father's behavior, Mother filed an application for a protective order and restraining order. She also filed a supplemental counter-petition, requesting that she be designated as the children's sole managing conservator. She also sought to confirm Father's child support arrearage and asked the court to render judgment for past-due child support.

In July 2010, the trial court held a hearing to effectuate the award of the Charles Schwab IRAs. The court found that the stock cost basis conditionally required by the decree for the distribution of the IRAs did not apply. The court entered orders assigning to Mother her interest in each account based upon the value of the accounts at the time of the parties' divorce in June 2007.

In May 2011, the trial court conducted a two-day bench trial. Father, who was incarcerated, appeared by telephone and through his attorneys. Mother appeared in person and through her attorney. After considering Mother's testimony, Father's testimony, and the evidence, the court granted Mother's application for protective order. The trial court removed Father and Mother as joint managing conservators of Phillip.[3] Mother was appointed sole managing

---

[3]Franklin reached the age of eighteen and graduated from high school during the pendency of the divorce. As a result, except for the provisions in the final judgment related to enforcement of past obligations related to Franklin, the orders in the final judgment for conservatorship, possession, child support, and medical support apply only to Phillip.

conservator, and Father was appointed possessory conservator of Phillip. The court did not enter orders for Father's possession of Phillip because the trial court found that Father had a history or pattern of committing family violence during the two years preceding the filing of the suit or during the pendency of the suit.

The court found that Mother was maintaining Phillip's health insurance at a cost of $138.00 per month and that Father should be ordered to pay this amount monthly to Mother as medical support beginning October 1, 2011, with the last payment due and payable on June 1, 2012, for a principal obligation of $1,242.00. The court also found that Father should be ordered to pay $802.00 per month in child support, beginning October 1, 2011, and ending on June 1, 2012, for a total amount of $7,218.00. The trial court ordered the health insurance and child support to be paid in a lump-sum of $8,186.37, the present value of the total amount of child and medical support due.

The court further found that as of May 11, 2011, Father was in arrears $10,869.11 for unreimbursed health-care expenses and $7,802.36 for health insurance reimbursements. The court reduced Father's child support obligations retroactively, and based upon that reduction, the court found that Father was in arrears $2,051.11 for child support and medical support as of September 29, 2011. The trial court rendered a cumulative judgment against Father for arrearages, including accrued interest, in the amount of $20,722.58. The trial court also awarded $29,000.00 in attorney's fees to Mother.

5

On October 13, 2011, Mother filed a motion to sign final orders based upon the trial court's rulings, along with a proposed final judgment and final protective order. Mother's motion was set for hearing on October 24, 2011. The hearing was reset for November 21, 2011. Father filed a motion for continuance asking the court to continue the hearing until March 20, 2012, to allow Father time to obtain and review the May 2011 trial transcript, to compare the court's rulings to Mother's proposed orders, and to prepare proposed final orders. Father ordered and received a copy of the trial transcript. On February 22, 2012, Mother filed a second motion to sign final orders, and the motion was set for hearing on March 30, 2012. Father filed a second motion for continuance, asking the court to continue the hearing for ninety days so that he could conduct additional discovery. Father also filed various motions seeking to reopen discovery and to compel discovery from Mother. The trial court denied Father's motions and signed Mother's proposed final judgment and final protective order on March 30, 2012. Father did not file a motion for new trial. Findings of fact and conclusions of law were neither requested nor filed. This appeal followed.

## II. Motion for Continuance and Motions for Additional Discovery

In his first issue, Father complains the trial court abused its discretion by denying his motion for continuance of the March 30 hearing on Mother's motion to sign final orders, thereby denying Father substantive and procedural due process. Father also complains the trial court abused its discretion by denying

his Motion and Request to Modify Discovery Period, Motion to Compel Discovery, Motion and Request for Production of Documents, and Motion for Discovery and Request for Timely Answers to Superseding Interrogatories by Respondent.  We disagree.

## A.  Standard of Review

We review a trial court's ruling on a motion for continuance for an abuse of discretion.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002).  We also review the trial court's actions allowing or denying discovery for an abuse of discretion.  *See TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).  In reviewing a trial court's ruling for an abuse of discretion, we do not substitute our judgment for that of the trial court.  *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) (orig. proceeding).  Instead, we must determine whether the trial court's action was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law.  *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The test is whether the trial court acted without reference to guiding rules or principles.  *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

## B.  Analysis

The trial court did not abuse its discretion by denying Father's motion for continuance of the hearing on Mother's motion to sign final orders or by denying Father's motions seeking additional discovery.  The purpose of the March 30 hearing was to reduce the trial court's rulings from the May 2011 trial to a final

7

judgment and final protective order. Father previously sought to continue the hearing until March 20, 2012, so that Father could obtain and review the transcript from the trial, compare the court's rulings to Mother's proposed orders, and prepare proposed final orders. Father ordered and received the transcript, but Father did not present proposed final orders to the trial court.

Father does not claim the proposed orders submitted by Mother were inconsistent with the court's rulings. Instead, he argues the trial court should have allowed him to reopen discovery related to issues decided in the divorce and post-divorce proceedings. Father complains that because Mother provided inadequate responses to Father's discovery requests, the trial court should have afforded him additional time to conduct discovery related to Mother's alleged fraud on the community prior to the divorce and her alleged submission of fraudulent documentation in support of her claims for health-care expense reimbursements.

Father claims Mother converted $100,000.00 from the family business prior to their divorce. Because of this alleged conversion, Father argues he is entitled to a reduction in Mother's share of the community estate. Father raised this claim for the first time in his motion for continuance of the March 30 hearing. Father never pled or offered any evidence of Mother's alleged fraud at trial in the present action. Moreover, the community property was divided in the 2008 divorce decree, which neither party appealed. Absent an appeal in the original divorce proceeding, the judgment became final, and Father could not challenge

the court's division of the community property in the present action. *See Nelson v. Williams*, 135 S.W.3d 202, 206 (Tex. App.—Waco 2004, pet. denied) (mem. op.) (holding res judicata barred claims for breach of fiduciary duty, fraud, civil conspiracy, and negligence because underlying matter, i.e., fraud concerning the value of the community estate, could have been litigated in divorce case); *see also Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) ("A judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property.").

Father also argues Mother's inadequate discovery responses necessitated further discovery related to Mother's submission of allegedly fraudulent documentation in support of her claims for health-care expense reimbursements in the post-divorce action. Father does not specify when he became aware of the alleged inadequacy of Mother's discovery responses. If he knew about the alleged inadequacies before trial, any complaints Father had regarding the adequacy of Mother's discovery responses were required to be raised prior to trial. *See State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616, 619–20 (Tex. 1998); *SunBridge Healthcare Corp. v. Penny*, 160 S.W.3d 230, 242 (Tex. App.—Texarkana 2005, no pet.). The record does not reflect Father raised any objections to Mother's discovery responses prior to the trial. Father also did not raise any complaints regarding Mother's discovery responses at trial. Moreover, to the extent Father is claiming he needs additional discovery so that he can challenge the propriety of the amounts ordered by the court, Father was afforded

9

ample opportunity to raise these issues at trial and to challenge the evidence Mother offered in support of her claims for health-care reimbursements.

We cannot say the trial court abused its discretion by denying Father's motion for continuance or his Motion and Request to Modify Discovery Period, his Motion to Compel Discovery, his Motion and Request for Production of Documents, and his Motion for Discovery and Request for Timely Answers to Superseding Interrogatories by Respondent. We overrule Father's first issue.

## III.  Protective Order

In his second issue, Father complains the trial court erred by issuing a protective order based on a finding of family violence without determining that family violence occurred and argues that the trial court should have issued findings of fact regarding whether family violence occurred. Father also complains there was insufficient evidence to support the protective order because there was no evidence of family violence occurring during the marriage. We disagree.

## A.  Standards of Review

A trial court's findings of fact are reviewable for legal and factual sufficiency under the same standards of review used to review the sufficiency of the evidence supporting a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). In a legal sufficiency review, we review the evidence in the light most favorable to the trial court's

10

findings, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the factfinder. *Id.* at 822. When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We defer to a trial court's factual findings if they are supported by the evidence. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008), *cert. denied*, 129 S. Ct. 952 (2009).

## B. Analysis

Contrary to Father's assertions, the trial court made findings in the protective order that family violence had occurred, that family violence was likely to occur in the future, and that Father had committed family violence. The family code provides that a trial court shall issue a protective order if, after a hearing, the court finds that family violence (1) has occurred and (2) is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001 (West 2008), 85.001 (West Supp. 2013). "Family violence" means:

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault . . . .

*Id.* § 71.004 (West 2008). "Family" includes individuals who are former spouses of each other and individuals who are the parents of the same child. *Id.* § 71.003 (West 2008).

Mother's application for protective order was based on family violence that occurred after the rendition of the parties' divorce on June 7, 2007, so the lack of evidence of family violence occurring during the marriage is irrelevant.[4] In support of her application, Mother testified that she was afraid of Father and that since the divorce, Father shoved Phillip, called Phillip names, spat on her, tried to get into her house, and left her about 100 threatening telephone messages. Mother made recordings of the threatening messages, and she gave copies of the recordings to her attorney. She also played the threatening messages for the police, but the police refused to do anything because Mother had not been physically harmed by Father and the police viewed the messages as Father merely expressing his feelings.

---

[4]Father argues that we do not have a sufficient record before us to determine if family violence occurred prior to the divorce because the transcript of the trial court's April 2007 interview of Franklin and Phillip has been destroyed. Father claims that we must consider the children's statements made during the interview and asks us to order the trial judge to record her recollections of the children's statements made during the interview. Because Mother's application for protective order was based upon family violence that occurred after the divorce, the interview is not pertinent to our analysis.

12

Mother further testified that in early May 2010, she discovered a box on her front porch containing a bomb constructed of two salad bowls taped together with wires, a battery, and gunpowder inside. Mother stated that the bomb did not go off and that it was later detonated by authorities. Mother later learned Father deposited the bomb on her porch. Father pled guilty to the offense of possession of an unregistered destructive device and was sentenced to 120 months in federal prison.

Mother testified that even though Father was sentenced to ten years' incarceration, she feared his appeal would be successful and he would be released within a year. She acknowledged that because Father was currently incarcerated, he would not personally be able to perpetuate family violence against her. But Mother feared he might have the ability to threaten her from prison. Mother stated Father had not made threats against her while he was in prison, but while he was in jail awaiting sentencing, third parties communicated threats to her on Father's behalf.

Applying the appropriate standards of review, and having considered all the evidence from the hearing on Mother's application for a protective order, we hold the evidence is legally and factually sufficient to support the trial court's granting of the protective order based upon a finding of family violence. We overrule Father's second issue.

## IV. Calculation of Child Support, Medical Expenses, Health Insurance Reimbursements, and Attorney's Fees and Accounting and Division of Assets and Liabilities

In his third issue, Father complains the trial court abused its discretion in calculating child support, medical expenses, health insurance reimbursements, and attorney's fees and in accounting and dividing the parties' assets and liabilities. In support of this issue, Father argues he is entitled to a reimbursement to his half of the community property because Mother converted $100,000.00 from the family business prior to the divorce. Father also argues that Mother's claims for reimbursement were fraudulent.[5]

Father presents no other arguments to support his contention that the trial court abused its discretion in its calculation of child support, medical expenses, health insurance reimbursements, and attorney's fees and in its accounting and dividing the parties' assets and liabilities.[6] Mother points out in her brief that Father fails to direct us to any of the trial court's findings as erroneous. In his reply brief, Father refers us to the contents of his motion for continuance, his motions for additional discovery, and his testimony at the March 30 hearing. He

---

[5]Father also contends the trial court should have continued the case to examine the evidence of Mother's alleged fraud. Because we have already concluded the trial court did not abuse its discretion by denying the motion for continuance, we do not address Father's argument here.

[6]We address Father's challenge to the trial court's valuation and division of the two Charles Schwab IRAs separately in this opinion.

14

also asks us to review his written objections to Mother's proposed final judgment that were filed with the trial court.

Father cannot simply incorporate by reference the arguments he made to the trial court. "A claim of error on appeal must be argued in the party's brief; it is insufficient simply to refer the appellate court to the party's trial court arguments." *Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 325 (Tex. App.—Fort Worth 2007, pet. denied); *see also Guerrero v. Tarrant Cnty. Mortician Servs. Co.*, 977 S.W.2d 829, 832–33 (Tex. App.—Fort Worth 1998, pet. denied) ("Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a party's trial court arguments."). Moreover, Father cannot include a new issue in his reply brief in response to Mother's argument but not raised in Father's original brief. *See* Tex. R. App. P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd), *cert. denied*, 534 U.S. 1024 (2001) ("Pointing out the *absence* of an appellant's argument does not raise the argument or entitle appellant to assert that argument for the first time in his reply brief. If the rule were construed otherwise, an appellee could never point out matters not raised by an appellant for fear of reopening the door."). Therefore, we will only consider the arguments made in Father's original brief.

The only arguments Father presents in support of his third issue are related to Mother's alleged fraud on the community prior to the divorce and to Mother's alleged fraudulent reimbursement claims. We are to construe appellate

15

briefs reasonably, yet liberally, so that the right to appellate review is not lost by waiver. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012); *see also Delgado v. Combs*, No. 07-11-00273-CV, 2012 WL 4867600, at *2 (Tex. App.—Amarillo Oct. 15, 2012, no pet.) (mem. op.) ("While *pro se* litigants must comply with the law and rules of procedure, *pro se* pleadings and briefs are to be liberally construed."). We attempt to reach the merits of an appeal whenever reasonably possible. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008). A reasonable, yet liberal, interpretation of Father's third issue is that he is challenging the propriety of the trial court's judgment with respect to the division of the parties' community property and the amounts of unreimbursed medical expenses and health insurance reimbursements. *See Delgado*, 2012 WL 4867600, at *2; *see also* Tex. R. App. P. 38.9 ("Because briefs are meant to acquaint the court with the issues in a case and to present argument that will enable the court to decide the case, substantial compliance with this rule is sufficient . . . .").

## A. Standards of Review

We review a trial court's decision to grant or deny the relief requested in a motion for enforcement for an abuse of discretion. *Beck v. Walker*, 154 S.W.3d 895, 901 (Tex. App.—Dallas 2005, no pet.). We also review a trial court's division of the marital estate under the same standard. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981). A trial court abuses its discretion if the court acts without reference to any guiding rules or principles, that is, if the act is arbitrary or

16

unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire*, 134 S.W.3d at 838–39. An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620. A trial court also abuses its discretion by ruling without supporting evidence. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012). But an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence and some evidence of substantive and probative character supports its decision. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009); *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g).

In a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Beck*, 154 S.W.3d at 901. The trial court is also the judge of the facts proved and the reasonable inferences to be drawn from those facts. *Id.* When presented with conflicting testimony, the factfinder may believe one witness and disbelieve another. *Id.* Where findings of fact and conclusions of law are neither filed nor timely requested, it is implied that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). The legal and factual sufficiency of the evidence to support these implied findings may be challenged when, as in this case, a reporter's record is brought forward. *Id.* at 84 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)). However, under an

17

abuse of discretion standard, arguments of legal and factual sufficiency of the evidence to support the judgment are not independent grounds for asserting error, but they are relevant factors in assessing whether a trial court abused its discretion. *Beck*, 154 S.W.3d at 902.

In calculating child-support arrearages, the trial court's discretion is very limited. *Chenault v. Banks*, 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.) Although the trial court can award certain offsets and credits, it has no discretion to forgive or decrease a past child-support obligation. *Id.* at 189–90. Thus, in a proceeding to confirm child-support arrearages, the trial court's child-support calculations must be based on the payment evidence presented, not the trial court's assessment of what is fair or reasonable. *Id.* at 190.

## B. Analysis

Father claims that because Mother converted $100,000.00 from the family business prior to filing for divorce, Father is entitled to a reimbursement to his half of the community property because of Mother's alleged misuse of community funds. It appears Father is suggesting that this reimbursement should have been credited against the amounts awarded to Mother in the judgment, thereby reducing the sums he owes to Mother.

Father made this claim for the first time in his motion for continuance of the March 30 hearing. Father never pled or offered any evidence of Mother's alleged fraud at the trial in the present action. Thus, Father did not timely raise this

18

contention in the trial court, and as a result, Father failed to preserve this issue for appellate review. *See* Tex. R. App. P. 33.1(a). Moreover, as discussed above, the parties' community property was divided in the 2008 divorce decree, which neither party appealed. Absent an appeal in the original divorce proceeding, the judgment became final, and Father cannot challenge the court's division of the community property in the present action. *See Nelson*, 135 S.W.3d at 206 (holding res judicata barred claims for breach of fiduciary duty, fraud, civil conspiracy, and negligence because underlying matter, i.e., fraud concerning the value of the community estate, could have been litigated in divorce case); *see also Pearson*, 332 S.W.3d at 363 ("A judgment finalizing a divorce and dividing marital property bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property").

Next, Father argues that Mother sought "fraudulent sums in fake reimbursement claims." Father does not elaborate as to how this assertion supports his third issue nor does he point us to any portion of Mother's testimony or evidence that he contends is "fraudulent" or "fake." Even though we are not charged with making Father's argument and analysis for him, we liberally construe this argument as a challenge to the sufficiency of the evidence supporting the amount of unreimbursed medical expenses and health insurance reimbursements awarded by the trial court. *See* Tex. R. App. P. 38.9.

The trial court found that as of the date of trial, Father was in arrears $7,802.36 for health insurance reimbursements and $10,869.11 for

19

unreimbursed health-care expenses. At trial, the parties stipulated that Father owed $7,802.36 to Mother for health insurance coverage that Mother maintained on Franklin and Phillip and that Father owed $2,160.00 to Mother for the children's extracurricular expenses. Based upon the evidence presented by Mother and Father, the trial court concluded that Father owed Mother $8,709.11 in unreimbursed medical expenses. The $10,869.11 judgment for unreimbursed medical expenses consisted of the $8,709.11 in unreimbursed medical expenses plus the $2,160.00 in extracurricular expenses. Because the amount of reimbursements in the judgment is supported by the parties' stipulations and the evidence presented at trial, we conclude the trial court did not abuse its discretion in its calculation of the amount of unreimbursed medical expenses and health insurance reimbursements awarded in the judgment. We overrule Father's third issue.

### V. Charles Schwab IRAs

Even though he does not raise it as a separate issue, Father devotes several pages in his brief to a discussion regarding the trial court's valuation of the two Charles Schwab IRAs at the time of their division. In light of our obligation to liberally construe briefs, we address Father's complaints regarding the division of the IRAs in a separate issue. *See* Tex. R. App. P. 38.9.

The final decree specified that the parties were to divide the IRAs by stock cost basis, if applicable. In July 2010, the trial court held a hearing to effectuate the award of the IRAs. The court found that the stock cost basis conditionally

20

required by the decree for the distribution of the IRAs did not apply. The court entered orders assigning to Mother a share of the current assets in the accounts that equaled her share of the accounts' value in June 2007. Father complains the trial court should have assigned to Mother her interest in each account based upon the value of the accounts at the time of the hearing in July 2010.

The record before us does not contain a record of the hearing at which the trial court effectuated the division of the IRAs. Nor does the record reflect Father requested the preparation of the record. Absent a reporter's record of the hearing, we must presume the missing record supports the trial court's ruling. *See In re L.C.H.*, 80 S.W.3d 689, 691 (Tex. App.—Fort Worth 2002, no pet.) ("Where a reporter's record is not requested, the trial court's findings of fact are conclusive, and we presume that sufficient evidence was introduced to support the findings and the judgment based on them."); *In re Marriage of Spiegel*, 6 S.W.3d 643, 646 (Tex. App.—Amarillo 1999, no pet.) ("Simply put, if the reporter's record is absent because the appellant did not satisfy [Texas Rule of Appellate Procedure] 35.3(b), we will not only continue to presume that the missing record supports the trial court's determination but also forego reviewing the dispute as authorized under appellate rule 37.3(c)."). Moreover, there is nothing in the record before us demonstrating that Father objected to these orders. Therefore, Father has not preserved this complaint for our review. *See* Tex. R. App. P. 33.1(a). We overrule Father's fourth issue.

21

## VI.  Conclusion

Having overruled each of Father's four issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  GARDNER, J.; DAUPHINOT and WALKER, JJ.

DELIVERED:  January 9, 2014