# NO. 12-15-00303-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MAEBELLE YARBROUGH, INDIVIDUALLY AND AS TRUSTEE OF THE DARRELL YARBROUGH TESTAMENTARY TRUST,* | § | *APPEAL FROM THE 145TH* |
| *APPELLANT* | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *ELC ENERGY, LLC, APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Maebelle Yarbrough, in both her individual capacity and as Trustee of the Darrell Yarbrough Testamentary Trust (collectively Yarbrough), appeals the trial court's summary judgment entered in favor of Appellees ELC Energy, LLC, Gene Goldsmith, John R. Musselman, and Blevco Resources, Inc. In one issue, Yarbrough argues that the trial court erred in granting ELC's motion for summary judgment. We affirm in part and reverse and remand in part.

## BACKGROUND

Yarbrough owns a tract of land in Nacogdoches County, Texas. ELC claims rights to the property pursuant to a 1980 mineral lease on that land entered into by Yarbrough and her, now, deceased husband, Darrell Yarbrough, with Schlensker Drilling Corporation (the lease or the Yarbrough lease). On February 12, 2015, pursuant to a farmout agreement[1] from certain

---

[1] A "farmout agreement" is "an agreement by which one who owns an oil and gas lease agrees to assign to another an interest in the lease in return for drilling and testing operations on the lease." *Farmout agreement*, BLACK'S LAW DICTIONARY (10th ed. 2014).

successors in interest to the Yarbrough lease, ELC sought to enter Yarbrough's property to conduct drilling operations. Yarbrough objected.

On February 17, 2015, ELC filed suit for trespass to try title and other causes of action. Yarbrough filed a counterclaim, and various third party claims also were filed. ELC filed an amended motion for summary judgment on August 18, 2015, to which Yarbrough responded. On September 10, 2015,[2] ELC amended its pleadings to claim it had the right to access Yarbrough's property by virtue of a different farmout agreement from the one it referenced in its prior pleadings, but which had been filed in support of its amended motion for summary judgment.

Yarbrough filed a motion for continuance, alleging that ELC's amended pleadings changed the nature of its cause of action and, therefore, Yarbrough needed additional time to conduct discovery. ELC filed a response. Following a hearing, the trial court denied Yarbrough's motion for continuance. Ultimately, the trial court granted ELC's amended motion for summary judgment. This appeal followed.

## MOTION FOR CONTINUANCE

In part of her first issue, Yarbrough argues that the trial court abused its discretion by denying her motion for continuance.

### Standard of Review

We review a trial court's ruling on a motion for continuance of a summary judgment hearing for an abuse of discretion. *See **D.R. Horton–Tex., Ltd. v. Savannah Props. Assocs.***, 416 S.W.3d 217, 222 (Tex. App.–Fort Worth 2013, no pet.) (citing ***BMC Software Belg., N.V. v. Marchand***, 83 S.W.3d 789, 800 (Tex. 2002)). We must determine whether the trial court acted without reference to guiding rules or principles or whether the trial court's action "was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." ***D.R. Horton–Tex.***, 416 S.W.3d at 222; *see also **BMC Software***, 83 S.W.3d at 800. Unless the trial court acted arbitrarily and unreasonably, we will not disturb its decision on appeal. ***Karen Corp. v. The Burlington N. & Santa Fe Ry. Co.***, 107 S.W.3d 118, 124 (Tex. App.–Fort Worth 2003, pet. denied).

---

[2] The record reflects that September 10, 2015, was Labor Day, a national holiday.

**Applicable Law**

Under Rule 166a(g), a court may grant a continuance of a summary judgment hearing when it appears "from the affidavits of a party opposing the motion [for summary judgment] that he cannot[,] for reasons stated[,] present by affidavit facts essential to justify his opposition[.]" TEX. R. CIV. P. 166a(g). The three nonexclusive factors used in determining whether a trial court has abused its discretion in denying a motion for continuance that seeks additional time to conduct discovery are (1) the length of time the case has been on file, (2) the materiality and purpose of the discovery sought, and (3) whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The Fort Worth Court of Appeals has required a party seeking a continuance to obtain additional evidence to provide an affidavit describing the evidence sought, explaining its materiality, and showing that it has used due diligence to timely obtain the evidence. *See D.R. Horton–Tex., Ltd.*, 416 S.W.3d at 222–23. The party moving for the continuance bears the burden to convince the court that she used due diligence in seeking to obtain the needed evidence, and must do so by specifying not only the evidence sought, but explaining why it was not obtained earlier in order to avoid the need for a continuance. *See Stierwalt v. FFE Transp. Servs., Inc.*, 499 S.W.3d 181, 192 (Tex. App.–El Paso 2016, no pet.).

An affidavit that is general and conclusory does not meet this standard. *Id.* Therefore, a trial court does not abuse its discretion by denying a motion for continuance when the affidavit submitted does not state with particularity what diligence was used to obtain the needed evidence or testimony. *See, e.g.*, *Landers v. State Farm Lloyds*, 257 S.W.3d 740, 747 (Tex. App.–Houston [1st Dist.] 2008, no pet.); *see also Schronk v. Laerdal Med. Corp.*, 440 S.W.3d 250, 264 (Tex. App.–Waco 2013, pet. denied) (trial court did not abuse its discretion in denying parties' motion for continuance of summary judgment hearing based on the need to conduct additional discovery where the parties failed to demonstrate that they exercised due diligence in obtaining additional discovery needed); *Dozier v. AMR Corp.*, No. 02–09–186–CV, 2010 WL 3075633, at *2–3 (Tex. App.–Fort Worth Aug. 5, 2010, no pet.) (mem. op.) (motion for continuance of summary judgment hearing based on needed evidence must be supported by affidavit stating with particularity what diligence moving party used to obtain that evidence, and therefore conclusory allegations not sufficient); *Rocha v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.–Austin 2002, no pet.) (same); *Gabaldon v. Gen. Motors Corp.*, 876 S.W.2d 367, 370 (Tex.

3

App.–El Paso 1993, no writ) (record failed to establish that trial court abused its discretion in denying motion to "defer ruling" on a summary judgment motion based on a request to obtain additional discovery, where continuance motion did not provide details of what steps, if any, movant had made toward obtaining needed discovery); *Martinez v. William C. Flores, M.D., P.A.*, 865 S.W.2d 194, 197 (Tex. App.–Corpus Christi 1993, writ denied) (trial court did not abuse discretion in denying motion for continuance of summary judgment hearing where appellants requested more time to conduct additional discovery to respond to the summary judgment motion, but failed, among other things, to explain why needed discovery had not occurred before submission date of motion).

Further, a party attempting to blame the opposing party for its inability to obtain needed discovery or evidence, claiming it has violated discovery or other rules, must be specific in making such an accusation. *See Allen v. United of Omaha Life Ins. Co.*, 236 S.W.3d 315, 325–26 (Tex. App.–Fort Worth 2007, pet. denied). The mere accusation that a party abused the discovery process, without sufficient explanation of how that abuse occurred, is insufficient to justify overturning a trial court's ruling on a motion to continue a summary judgment hearing. *Id.* (trial court did not abuse discretion in denying motion for continuance of summary judgment hearing where party claimed that it was unable to obtain needed evidence due to opposing party's dilatory discovery tactics, but failed to explain exactly how that party abused discovery process).

## Yarbrough's Motions

In her motion for continuance, Yarbrough set forth the relevant procedural history of the case. That is, ELC filed suit on February 17, 2015 and filed its original motion for summary judgment on July 9, 2015. In this motion, ELC contended that its right to enter onto Yarbrough's land stemmed from a farmout agreement from Goldsmith, Musselman, and Blevco. On July 16, 2015, ELC filed its Second Amended Original Petition, in which it continued to allege a right of entry based on this farmout agreement. Following objections to her request for production, Yarbrough filed a motion to compel against ELC, Blevco, Goldsmith, and Musselman on August 12, 2015. She served a second request for production on ELC that same day.

On August 18, 2015, ELC filed its First Amended Motion for Summary Judgment. In this amended motion, ELC claimed to have the right to access Yarbrough's property by virtue of a different farmout agreement from Musselman and Blevco. On September 1, 2015, ELC served

Yarbrough with its objections and responses to her second request for production. On September 3, 2015, Yarbrough filed her First Amended Motion to Compel ELC, Musselman, Goldsmith, and Blevco to respond fully to her first and second requests for production.

On September 4, 2015, Yarbrough filed a motion for continuance of the hearing on ELC's amended motion for summary judgment, which was scheduled for September 14, 2015.[3] She filed a response to ELC's motion that same day. On September 7, 2015,[4] ELC filed its Third Amended Original Petition, in which it alleged it had the right to access Yarbrough's property by virtue of a farmout agreement from Musselman and Blevco. On September 10, 2015, ELC filed a response to Yarbrough's motion for continuance.

On September 14, 2015, the scheduled date of the hearing on ELC's motion for summary judgment, Yarbrough filed a supplemental motion for continuance, in which she argued that ELC's third amended petition constituted a material change in position and caused her the need to conduct further discovery.

In her motions for continuance, Yarbrough makes the following arguments:

• In its amended motion, ELC changed the basis for its right of access to Yarbrough's property from one farmout agreement to another and, therefore, the affidavits made in support of these farmout agreements, in which the affiant swore that the attached farmout agreement was the operative document, demonstrate that there is a material question of fact regarding which document is the operative agreement.

• ELC's second amended petition makes material changes in allegations including (1) Goldsmith's is listed as a party to the farmout agreement despite his having been removed as a party to the agreement underlying ELC's amended motion for summary judgment, (2) ELC's second amended petition removed all allegations pertaining to the Fender lease even though ELC claims rights to Yarbrough's property under the Fender lease in its amended motion, (3) claims for possessory rights under the Access-Development rights of the lease, and (4) abandonment of certain allegations pertaining to the purposes for the formation of the J. Paul Goldsmith Acme Brick Company Oil Unit No. 1, which previously had been a judicial admission of that unit's purpose.

• As a result, Yarbrough "needs and is entitled to a reasonable time to make discovery because of the various changes in position, abandonment of claims, addition of claims, changes of

---

[3] In her motion for continuance, Yarbrough noted that she had made special exceptions to multiple allegations in ELC's second amended petition and that she was unable to be reasonably prepared for trial until ELC repleaded.

[4] September 7, 2015, was Labor Day. Yarbrough notes that her attorneys' office was closed for the holiday and her attorneys received the document via email on September 8, 2015.

5

factual position[,] and various conflicts between Mr. Gordon's first Affidavit and second Affidavit, as well as the involvement and responsibility of Atlantis Oil Company."[5]

• Furthermore, Yarbrough "needs and is entitled to a reasonable time to make discovery because of the various changes in position, abandonment of claims, addition of claims, changes of factual position[,] and various conflicts between ELC's Second Amended Original Petition with the allegations contained in its First Amended Original Petition and/or its First Amended Motion for Summary Judgment."

• Yarbrough filed multiple written discovery requests upon ELC and other "Cross-Defendants." These requests were met, in part, with objections, and Yarbrough has filed a motion to compel discovery.

• Yarbrough has "not had a reasonable time to conduct discovery, particularly as to Cross-Defendants, Blevco, Musselman[,] and Goldsmith[.]"

• Yarbrough "is entitled to the discovery responses to which she has been denied by virtue of unmeritorious objections made by [ELC] and Cross-Defendants. Such responses should be made before [Yarbrough] takes oral depositions of the other parties to this case. Further, [Yarbrough] has not had a reasonable time to conduct discovery as to the newly added allegations and changes of position that [ELC] made in its Second Amended Original Petition and/or its First Amended Motion for Summary Judgment."

• Yarbrough has leveled special exceptions to multiple allegations in [ELC's] Second Amended Original Petition. Yarbrough is unable reasonably to be prepared for trial until ELC repleads to meet any such special exceptions that are sustained by the court.

• Yarbrough received ELC's third amended petition less than seven days before the summary judgment hearing. ELC materially changed its position by (1) alleging it has rights under a different farm out agreement, (2) claiming a specific amount of damages, and (3) alleging statutory authority for the recovery of attorney's fees. As a result, Yarbrough "needs and is entitled to a reasonable time to make discovery because of the various changes of position, abandonment of claims, addition of claims, changes of factual position[,] and various conflicts between [ELC's] Third Amended Original Petition and its Second Amended Original Petition."

## Analysis

The case had been on file for nearly seven months by the time of the summary judgment hearing. However, Yarbrough failed to set forth in her motions for continuance with any particularity what sort of further discovery she wished to conduct or what material information any such discovery might yield. *See* **D.R. Horton–Tex., Ltd.**, 416 S.W.3d at 222–23. In her motion, Yarbrough, at most, (1) identified the differences in ELC's motions for summary judgment and pleadings, which mostly concerned ELC's reliance on a different farmout agreement, to which Goldsmith was no longer a party, and (2) identified Blevco, Musselman, and Goldsmith as persons from whom she intended to seek discovery. But these assertions were

---

[5] Yarbrough notes that the second farmout agreement identifies Atlantis Oil Company, Inc. as the party currently operating the J.P. Goldsmith Acme Brick #1 Well and that ELC will seek the Rail Road Commission's approval for Atlantis for certain actions required by ELC.

not specific enough to apprise the trial court of what information she intended to seek and the materiality of any such information.

Based on our review of the record, we have found no indication that Yarbrough took any steps to notice the depositions of Blevco, Musselman, or Goldsmith. Furthermore, Yarbrough made reference to ELC's and other cross defendants' objections to written discovery and noted that she had filed a motion to compel. But she never sought a ruling on her motion to compel[6] nor did she specify in her motions for continuance how any of the objected-to discovery requests would be material to her defending against ELC's amended summary judgment motion.

Lastly, ELC filed its third amended petition on a holiday, and, thus, it is considered filed only six days before the summary judgment hearing. *See* TEX. R. CIV. P. 4, 21(f)(5)(A), 63. In our review of the record, we have not found that ELC requested leave to file its amended pleading within seven days of the summary judgment hearing or that the trial court expressly granted it leave to do so. Moreover, Yarbrough stated to the trial court during the hearing that the pleading was filed fewer than seven days before the hearing. However, based on our review of the record, we conclude that the evidence indicates that Yarbrough did not make a sufficient showing of surprise to necessitate that the trial court refuse to grant ELC leave. *See* TEX. R. CIV. P. 63. The pleading tracked the arguments as set forth in ELC's amended motion for summary judgment, with which Yarbrough was served on August 18, 2015. Further still, the pleading was filed within three days of Yarbrough's motion for continuance, in which she emphasized her special exceptions to ELC's second amended petition. Therefore, we presume that the trial court granted ELC leave to amend. *See Guereque v. Thompson*, 953 S.W.2d 458, 464 (Tex. App.–El Paso 1997, pet. denied).

In sum, Yarbrough's motions for continuance did not sufficiently apprise the trial court of what discovery she needed. Furthermore, she failed to seek a ruling from the trial court on her motion to compel written discovery, and there is no evidence that she took any steps to notice the

---

[6] *Cf. Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex.1993) (failure to obtain pretrial ruling on discovery disputes that exist before commencement of trial constitutes waiver of any claim for sanctions based on that conduct); *Roberts v. Whitfill*, 191 S.W.3d 348, 361 n.3 (Tex. App.–Waco 2006, no pet.) (if neither party asks for hearing on objections to discovery, party who sent request for discovery waives requested discovery). Here, we do not intend to convey that Yarbrough failed to preserve these objections since she was seeking a continuance of the summary judgment hearing. But we note that Yarbrough's mere filing of a motion to compel responses to her discovery requests had little practical chance of facilitating her receipt of such discovery unless she actively sought a ruling on the motion by setting it for hearing or submission. *See* TEX. R. CIV. P. 193.4(b) (when trial court overrules objection, responding party must produce requested material within thirty days after ruling or at such time court orders).

depositions of any of the cross defendants from whom she argued discovery was needed. Lastly, we presume the trial court granted ELC leave to file its third amended petition, and Yarbrough has not specifically argued on appeal that the trial abused its discretion in granting leave under Rule 63. Therefore, we hold that the trial court did not abuse its discretion in denying Yarbrough's motion for continuance. To the extent Yarbrough's sole issue relates to the trial court's denial of her motion for continuance, it is overruled.

## SUMMARY JUDGMENT

In the remainder of her sole issue, Yarbrough argues that the trial court erred in granting summary judgment against her.

### Standard of Review and Governing Law

The movant for traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A defendant who conclusively negates at least one essential element of the nonmovant's cause of action is entitled to summary judgment as to that cause of action. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). Likewise, a defendant who conclusively establishes each element of an affirmative defense is entitled to summary judgment. *Id.* Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion and present to the trial court any issues that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979). The only question is whether an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c).

Moreover, when a party contends that summary judgment is improper because of an affirmative defense, it must do more than merely plead that defense. *Bans Props., L.L.C. v. Hous. Auth. of City of Odessa*, 327 S.W.3d 310, 313 (Tex. App.–Eastland 2010, no pet.). An affirmative defense will prevent the granting of a summary judgment only if the defendant supports each element of the affirmative defense by summary judgment evidence. *Id.*; *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.–Houston [1st Dist.] 2002, pet. denied). This requires evidence sufficient to establish at least a fact question on each element. *Bans Props.*, 327 S.W.3d at 313.

The trespass-to-try-title statute was enacted in 1840 to provide a remedy for resolving title issues. TEX. PROP. CODE ANN. § 22.001(a) (West 2014) ("A trespass to try title action is the method of determining title to lands . . ."); ***Martin v. Amerman***, 133 S.W.3d 262, 265 (Tex. 2004). The statute typically is used to clear problems in chains of title or to recover possession of land unlawfully withheld from a rightful owner. ***Martin***, 133 S.W.3d at 265 (citing ***Standard Oil Co. of Tex. v. Marshall***, 265 F.2d 46, 50 (5th Cir. 1959)). To prevail in a trespass-to-try-title action, a plaintiff usually must (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. ***Wilhoite v. Sims***, 401 S.W.3d 752, 760 (Tex. App.–Dallas 2013, no pet.) (citing ***Martin***, 133 S.W.3d at 265).

**ELC's Right to Enter Yarbrough's Property Pursuant to Lease and Farmout Agreement**

The only issue before the trial court on summary judgment was whether there was any material fact issue regarding whether the lease, by which ELC claimed the right to access Yarbrough's property via farmout agreement, still was in effect. ELC attached a copy of the lease to its amended motion for summary judgment. The pertinent terms of the lease are summarized as follows:

• The Lessee is granted the exclusive right of exploring, drilling, mining and operating for, producing, and owning oil and gas from the land covered by the lease.

• The term of the lease is five years beginning on May 21, 1980, and continuing as long thereafter as "operations" are conducted upon the leased acreage with no cessation for more than ninety consecutive days.

• The term "operations" includes producing oil and gas whether or not in paying quantities.

• The Lessee has the right to pool or unitize all or any part of the land covered by the lease with any other land, lease, or leases. The Lessee exercises the pooling right by executing an instrument identifying the unit and filing it of record in the public office in which the Lease is recorded.

• The Lessee may pool as to all or part of the horizons found under the Lease, or as to oil wells only, or as to gas wells only.

• A pooled oil unit may not be larger than 80–88 surface acres. A pooled gas unit may not be larger than 640–704 surface acres.

• Any operations conducted on any part of the unit are considered for all purposes, except payment of royalty, operations conducted on the land covered by the Lease.

9

• Once a unit is established, it remains in force as long as any lease pooled into the unit remains in force.

The summary judgment record contains a title summary indicating that John A. Musselman and Blevco Resources, Inc. are among the successors in interest to the Yarbrough lease. In the instant case, the summary judgment evidence reflects that the Ben Irwin Gas Unit No. 1 (Ben Irwin Gas Unit) was created on or about August 13, 1982. A portion of Yarbrough's property subject to the Yarbrough lease is contained within that unit. A declaration of the Ben Irwin Gas Unit was recorded in the public records of Nacogdoches and Rusk Counties. The declaration states, in pertinent part, that the pooled unit is created for the purpose of exploring, drilling, mining, and operating for, producing and owning all gas produced from any well or wells located on the unit as such wells are so classified as gas wells by the Railroad Commission of Texas.

The summary judgment evidence indicates that the Ben Irwin No. 1 Well, which was drilled on the unit and classified as a gas well by the Texas Railroad Commission, produced gas from March 1983 through September 1987. Moreover, the evidence indicates that the Acme Brick Well No. 1 (Acme Brick Well) was drilled within the boundaries of the Ben Irwin Gas Unit in 1984.[7] The summary judgment record reflects that the Acme Brick Well has continuously produced gas through February 2015.

Further still, the summary judgment evidence contains a farmout agreement effective October 15, 2014, by Musselman and Blevco assigning their respective access and development rights to ELC.[8] The record further contains an extension of this farmout agreement. The farmout agreement is supported by the first amended affidavit of ELC's President and Chief Executive Officer James R. Gordon, who states, among other things, that the agreement expressly grants ELC the right to drill a well or wells on land covered by the lease.

_____

[7] This well was originally classified as an oil well and was contained within the J. Paul Goldsmith Acme Brick Company Oil Unit No. 1, which exists within the boundaries of the Ben Irwin Gas Unit. In December 1984, the Acme Brick Well was reclassified with the Texas Railroad Commission as a gas well.

[8] The copy of the farmout agreement attached to ELC's amended motion is not signed. Yarbrough makes note of this fact in her brief, but does not point out any objections she made to this evidence, nor does she cite any authority indicating that the letter cannot be considered as evidence of the terms of the agreement. Gordon testified in his amended affidavit that he "negotiated and signed" the agreement on behalf of ELC. The farmout extension, which is signed by Musselman, makes reference to this farmout agreement and sets forth that the extension "will be binding upon all parties who execute it" and "each part executing this Extension ratifies and confirms" the farmout agreement.

The aforementioned evidence supports ELC's claim that it had the right to access Yarbrough's property in February 2015, for the purposes set forth in the farmout agreement.

**The Acme Brick Well No. 1**

Yarbrough first argues that the lease was no longer valid because of cessation of production within the Ben Irwin Gas Unit. Specifically, she argues that the Acme Brick Well, which was originally classified as an oil well and exists within an oil unit, cannot serve to perpetuate the Ben Irwin Gas Unit. We disagree.

The evidence reflects that the Acme Brick Well was reclassified as a gas well by the Texas Railroad Commission. The lease sets forth that the lessee may pool, among other things, gas wells. It further states that any operations conducted on any part of the unit are considered for all purposes, except payment of royalty, operations conducted on the land covered by the lease. Lastly, according to the pooling declaration for the Ben Irwin Gas Unit, the pooled unit is created for the purpose of exploring, drilling, mining, and operating for, producing and owning all gas produced from any well or wells located on the unit as such wells are so classified as gas wells by the Railroad Commission of Texas. Thus, despite the fact that the Acme Brick well, a gas well, exists within the boundaries of an oil unit, it is nonetheless a gas well that exists within the boundaries of the Ben Irwin Gas Unit.[9] Therefore, we conclude that the Acme Brick Well served to perpetuate leases, including the Yarbrough lease, within the Ben Irwin Gas Unit.

**Unity of Ownership**

Yarbrough further argues that there is no unity of ownership between the Ben Irwin Gas Unit and the Acme Brick Unit. The Yarbrough lease permits pooling with any other land, lease, or leases. Since the Yarbrough lease is pooled with other land in the Ben Irwin Gas Unit and the Acme Brick Well is a gas well within that unit, it makes no difference whether there is unity of ownership between the Ben Irwin Unit and the Acme Brick Unit.

---

[9] We note that the issue before this court is unrelated to the question not reached by the court of appeals in *Hooks v. Samson Lone Star Ltd. P'ship*, 389 S.W.3d 409, 433–434 (Tex. App.–Houston [1st Dist.] 2012), *aff'd in part*, *rev'd in part*, 457 S.W.3d 52 (Tex. 2015). In *Hooks*, the matter concerned two overlapping gas units. *See id.* at 433. The instant case involves an oil unit's existing within the boundaries of a gas unit. The terms of the Yarbrough lease do not limit having a gas unit overlapping an oil unit. To the contrary, the lease permits pooling as to any and all minerals and horizons, including oil wells and gas wells.

**Gordon's Affidavits**

Yarbrough next argues that Gordon's amended affidavit contradicts his previous affidavit made in support of ELC's original summary judgment. Thus, according to Yarbrough, since Gordon is an interested witness, the contradictions between these affidavits create a fact issue.

Summary Judgment based on the uncontroverted affidavit of an interested witness is proper if the evidence is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. *See Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex.1997); *First Nat. Bank in Munday v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 881 (Tex. App.–Eastland 2006, pet. denied). Further, although an amended response to a motion for summary judgment supercedes the previous response, it does not preclude the consideration of the summary judgment evidence attached to the original pleading. *See* TEX. R. CIV. P. 64; *Evans v. First Nat'l Bank of Bellville*, 946 S.W.2d 367, 376 (Tex. App.– Houston [14th Dist.] 1997, writ denied); *Whitaker v. Huffaker*, 790 S.W.2d 761, 763 (Tex. App.–El Paso 1990, writ denied) ("[O]nce filed, an affidavit in support of summary judgment is subject to consideration in connection with a subsequent amended motion even though not attached to the latter."); *see also Dixie Dock Enters. v. Overhead Door Corp.*, No. 05-01-00639-CV, 2002 WL 244324, at *3 (Tex. App.–Dallas Feb. 21, 2002, no pet.) (op., not designated for publication). Thus, because Gordon's original affidavit is part of the summary judgment proof, it may be considered in determining whether ELC met its burden.

The brunt of Yarbrough's argument is that because Gordon's amended affidavit claims that ELC has the right to enter Yarbrough's land by virtue of a different farmout agreement than he referenced in his original affidavit, this contradiction creates a fact issue because Gordon is an interested witness. We disagree.

The issue at summary judgment was whether ELC had the right to enter Yarbrough's property. It is apparent from the record of the summary judgment hearing that the earlier farmout agreement was mistakenly included, thereby necessitating ELC's filing of an amended motion and Gordon's amended affidavit to include the correct farmout agreement. Nonetheless, the fact that ELC could not, in fact, claim the right to enter Yarbrough's land under the original farmout agreement does not mean that the existence of that agreement negates or contradicts its right to access the property under the later farmout agreement. As a result, we conclude that the earlier farmout agreement does not contravene the second farmout agreement and, therefore,

12

Gordon's amended affidavit, in which he relies on that subsequent farmout agreement for ELC's right of access, does not contradict his statements in his original affidavit.[10]

**Yarbrough's Affirmative Defenses**

Yarbrough argues that ELC has judicially admitted that the Ben Irwin well was abandoned. However, as set forth above, gas production from the Acme Brick well, which began before the Ben Irwin Well was abandoned and continued until at least February 2015, perpetuated the lease under the Ben Irwin Gas Unit. Therefore, the abandonment of the Ben Irwin well does not interfere with the perpetuation of the Yarbrough lease.

Yarbrough further argues that certain statements in the Acme Brick Oil Unit pooling declaration estop ELC from claiming that the Yarbrough lease is perpetuated by the Acme Brick Gas Well.[11] Estoppel arises where, by the fault of one, another is induced to change his or her position for the worse. *Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 788 (Tex. App.–Dallas 2002, pet. denied). The elements of an estoppel defense are (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party without knowledge or means of obtaining knowledge of the facts, (5) who detrimentally relies on the representations. *Id.* Yarbrough has not cited to, nor has our review of the voluminous summary judgment record uncovered, any evidence that (a) ELC made misrepresentations to Yarbrough, (b) Yarbrough had knowledge of the Texas Railroad Commission records pertaining to the Acme Brick Oil Unit, or (c) she relied upon any statements in those records. Therefore, we conclude that Yarbrough did not demonstrate that her estoppel defense precluded ELC's entitlement to summary judgment.

**Admissibility of Summary Judgment Evidence**

Further still, Yarbrough argues that the trial court erred in sustaining ELC's objection to her summary judgment evidence supporting a lack of production from the Acme Brick Well beginning in November 2014 pursuant to Texas Rule of Civil Procedure 193.6.

We review the admissibility of summary judgment evidence for abuse of discretion. *See Ash v. Hack Branch Distrib. Co., Inc.*, 54 S.W.3d 401, 409 (Tex. App.–Waco 2001, pet. denied). Under Rule 193.6, discovery that is not timely disclosed and witnesses that are not

---

[10] Under this same rationale, Gordon's testimony regarding the farmout extension in his original affidavit does not contradict his testimony with respect to the farmout extension in his amended affidavit.

[11] We note that Yarbrough failed to cite any authority in support of her estoppel argument. *See* TEX. R. APP. P. 38.1(i).

timely identified are inadmissible as evidence. TEX. R. CIV. P. 193.6(a); *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881 (Tex. 2009). A party who fails to supplement discovery timely and who seeks to introduce the evidence has the burden of establishing good cause or a lack of unfair surprise or prejudice before the trial court may admit the evidence. *See* TEX. R. CIV. P. 193.6(b). Rule 193.6 applies both to trial and summary judgment proceedings. *See Gillenwater*, 285 S.W.3d at 882.

In the instant case, Yarbrough first filed and served ELC with the documents at issue in conjunction with her response to ELC's motion for summary judgment on September 4, 2015, ten days prior to the hearing on ELC's motion.

Because ELC had made a discovery request pertaining to these documents, Yarbrough had a duty to supplement her response to ELC. *See* TEX. R. CIV. P. 193.5(a)(2). Because it is presumed that an amended or supplemental response made less than thirty days before trial was not made reasonably promptly, Yarbrough had the burden to demonstrate that she had good cause for her failure to timely supplement the discovery response or the failure to timely supplement would not unfairly surprise or unfairly prejudice ELC. *See* TEX. R CIV. P. 193.5(b), 193.6. Here, Yarbrough did not argue to the trial court or in her brief on appeal that she had good cause for her failure to supplement her discovery response or that such failure did not unfairly surprise or unfairly prejudice ELC. Accordingly, we conclude that the trial court did not abuse its discretion in sustaining ELC's objections to this summary judgment evidence. *See* TEX. R. CIV. P. 193.6.

Yarbrough argues that because ELC failed to seek a ruling on its motion to compel prior to the hearing on its motion, it waived its right to discovery of these documents, and, thus, Yarbrough had no duty to supplement the discovery. *See Caldwell*, 850 S.W.2d at 170 (failure to obtain pretrial ruling on discovery disputes that exist before commencement of trial constitutes waiver of any claim for sanctions based on that conduct); *Whitfill*, 191 S.W.3d at 361 n.3 (if neither party asks for hearing on objections to discovery, party who sent request for discovery waives requested discovery). During the hearing on the matter, Yarbrough conceded in response to the trial court's queries that the evidence in question was responsive to two of ELC's requests for production of documents. And although Yarbrough made some generalized references to

discovery objections, she further conceded that neither the request for production nor the objection thereto were in the record.[12]

Based on our review of the voluminous record in this appeal, and despite the assertions in the parties' October 16, 2015, Rule 11 agreement, we have not found this request for production of documents or any responses or objections to it. As a result, there is no indication in the record that the evidence in question was subject to a particular objection or claim of privilege, or whether Yarbrough responded to the relevant requests "subject to" her objections, if any. Therefore, we conclude that the fact that ELC never sought a ruling on its motion to compel does not, without more, demonstrate that Yarbrough had no duty to supplement her discovery response.

## Evidence Does Not Support Production Beyond February 2015

Yarbrough next argues that even if the aforementioned evidence was properly excluded, ELC's summary judgment evidence only proves production from the Acme Brick Well through February 2015. To prevail in a trespass-to-try-title action, a plaintiff must usually (1) prove a regular chain of conveyances from the sovereign, (2) establish superior title out of a common source, (3) prove title by limitations, or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Sims*, 401 S.W.3d at 760.

Here, the record reflects that Yarbrough prevented ELC from exercising its possessory rights on or about February 12, 2015, and that ELC filed this suit on February 17, 2015. As set forth previously, gas production from the Acme Brick Well serves to perpetuate the Yarbrough lease, under which ELC had a right to access Yarbough's property pursuant to the farmout agreement. Thus, evidence of production from this well through February 2015 supports ELC's right to access the property at the time suit was filed. Any production beyond that date is only germane to the issue of damages, which was not an issue at summary judgment and is not challenged in this appeal.[13]

---

[12] The record contains a Rule 11 agreement dated October 16, 2015, in which the parties stipulate that ELC's request for production and Yarbough's response thereto, including objections, were before the trial court and were considered by the court in its pretrial rulings and rulings on summary judgment.

[13] In its Final Summary Judgment, the trial court awarded court costs against Yarbrough, but awarded no damages. Yarbrough does not raise any issues on appeal challenging the trial court's award of court costs.

## Trial Court's Granting Summary Judgment Against Cross Defendants

Yarbrough further argues that the trial court erred in granting summary judgment against Cross Defendants Gene Goldsmith, John A. Musselman, Blevco Resources, Inc., and Atlantic Oil Company, Inc., none of which filed motions for summary judgment.

A party against whom a claim, counterclaim, or cross claim is asserted may move for summary judgment. *See* TEX. R. CIV. P. 166a(b). A motion for summary judgment must itself expressly present the grounds upon which it is made and must stand or fall on these grounds alone. *Cf. **Sci. Spectrum, Inc. v. Martinez***, 941 S.W.2d 910, 912 (Tex. 1997); ***Muston v. Nueces Cty. Sheriff's Dep't***, 122 S.W.3d 469, 471 (Tex. App.–Corpus Christi 2003, no pet.); *see* TEX. R. CIV. P. 166a(c). A summary judgment that purports to dispose of causes of action not addressed in the summary judgment motion is erroneous. *Cf. **Mary Kay Cosmetics, Inc. v. N. River Ins. Co.***, 739 S.W.2d 608, 611 (Tex. App.–Dallas 1987, no writ); *see also **Brown v. Pennzoil-Quaker State Co.***, 175 S.W.3d 431, 442 (Tex. App.–Houston [1st Dist.] 2005, pet. denied). A judgment that grants more relief than requested is subject to reversal. ***Lehmann v. Har–Con Corp.***, 39 S.W.3d 191, 202 (Tex. 2001). However, if a trial court errs in granting a summary judgment on a cause of action not expressly presented by written motion, the error is harmless when the omitted cause of action is precluded as a matter of law by other grounds raised in the case. *Cf. **G & H Towing Co. v. Magee***, 347 S.W.3d 293, 298 (Tex. 2011).[14]

In the case at hand, none of the Cross Defendants Yarbrough references filed motions for summary judgment. Therefore, when the trial court rendered its Final Summary Judgment disposing of all parties, it erroneously granted more relief than was requested. *Cf. **Lehmann***, 39 S.W.3d at 202.

This error is subject to harm analysis under Texas Rule of Appellate Procedure 44.1. *See* ***Magee***, 347 S.W.3d at 297. The harmless error rule states that before reversing a judgment

---

[14] *Cf. also **Wilson v. Davis***, 305 S.W.3d 57, 73 (Tex. App.–Houston [1st Dist.] 2009, no pet.). In ***Wilson***, the court stated as follows:

> [S]ome courts of appeals, including our own, have recognized a very limited exception to the general rule. Although the exception's application has been expressed in various ways, it can be reduced to two: (1) when the movant has conclusively proved or disproved a matter (usually corresponding to a claim's element or to an affirmative defense) that would also preclude the unaddressed claim as a matter of law or (2) when the unaddressed claim is derivative of the addressed claim, and the movant proved its entitlement to summary judgment on that addressed claim. For the exception to apply, this Court has always required a very tight fit between what was proved or disproved in the motion and what elements the unaddressed claim, as it was alleged, required: otherwise, the exception could swallow the rule.

*Id.*

because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause "the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." **Id.** (citing TEX. R. APP. P. 44.1(a)). It is the complaining party's burden to show harm on appeal. **Guniganti v. C & S Components Co., Ltd.**, 467 S.W.3d 661, 666 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (citing **Ford Motor Co. v. Castillo**, 279 S.W.3d 656, 667 (Tex. 2009)).

In the instant case, Yarbrough only has asserted that the trial court's granting of summary judgment to the Cross Defendants was erroneous. She wholly has declined to engage in any analysis regarding how this error was harmful, and we note without deciding that the court's holding in **Magee** may support the proposition that it is not harmful. *See* **Magee**, 347 S.W.3d at 298. Nonetheless, it is not the role of this court to conduct harm analysis absent some cogent argument on Yarbrough's part. Therefore, since Yarbrough has failed to brief the issue of whether this error was harmful, we conclude that she has waived the error.

## Yarbrough's Liability as Trustee

Lastly, Yarbrough argues that there is no evidence that she is liable in her capacity as trustee and cites to her verified original answer, in which she specifically denied that she "owns any interest in the land and minerals subject of this suit." In its brief, ELC argues that Yarbrough's assertion is "inexplicable," and that it "proffered evidence that Yarbrough as Trustee succeeded to her late husband's community property interest under the Lease." However, ELC provides no citation in its brief to where in the voluminous summary judgment record this evidence may be found.

In our review of the summary judgment record we note that it contains a copy of the Last Will and Testament of Darrel G. Yarbrough. The will sets forth, in pertinent part, as follows:

SECTION IV.
If she should survive me, I give to my wife any interest I may have in any real property which I own at the time of my death and which we then use as our principal residence, together with all buildings and improvements thereon and appurtenances thereto and all policies of insurance relating thereon.

SECTION V.
If my wife survives me, I give to her such an amount of property as will be equal to the maximum marital deduction (allowable in determining the Federal estate tax on my gross estate) diminished by the value for Federal estate tax purposes of all other items in my gross estate which qualify for the marital deduction and which pass or have passed to my wife pursuant to other

provisions of this Will or otherwise . . . . My Executor shall transfer to my wife pursuant to this Article only those properties in my gross estate which qualify for the marital deduction, [provided, however, that property characterized as income in respect of the decedent for Federal income tax purposes shall not be used to satisfy this gift unless other properties which qualify are insufficient to satisfy such gift] . . . .

SECTION VII.
I give my residuary estate to my trustee, in trust, to have, hold and administer under the terms and conditions hereunder of "The Residuary Trust."

We cannot determine, based on our review of the will, whether the land that is subject of this suit passed to Yarbrough under the will or to the residuary trust. Accordingly, based on our review of the summary judgment record, and with no citation to any documents in that record by ELC to support its contentions, we conclude that there is no summary judgment evidence to support that Yarbrough is liable in her capacity as trustee. *See generally **Ray Malooly Trust v. Juhl***, 186 S.W.3d 468, 570 (Tex. 2006).

## Summation

The trial court erred in rendering summary judgment against Yarbrough as Trustee of the Darrell Yarbrough Testamentary Trust. Therefore, Yarbrough's sole issue is sustained to the extent summary judgment was rendered against her in her capacity as trustee. Otherwise, we hold that the trial court did not err in rendering its Final Summary Judgment. The remainder of Yarbrough's sole issue is overruled.

## CONCLUSION

We have sustained Yarbrough's sole issue to the extent the trial court rendered summary judgment against her in her capacity as Trustee of the Darrell Yarbrough Testamentary Trust. Having done so, we *reverse* the trial court's Final Summary Judgment as to Maebelle Yarbrough as Trustee of the Darrell Yarbrough Testamentary Trust and *remand* the matter for further proceedings consistent with this opinion. Having overruled the balance of Yarbrough's sole issue, we *affirm* the remainder of the trial court's judgment.

GREG NEELEY
Justice

Opinion delivered May 31, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

18



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 31, 2017**

**NO. 12-15-00303-CV**

**MAEBELLE YARBROUGH, INDIVIDUALLY AND AS TRUSTEE OF THE DARRELL YARBROUGH TESTAMENTARY TRUST,**
Appellant
V.
**ELC ENERGY, LLC,**
Appellee

Appeal from the 145th District Court

of Nacogdoches County, Texas (Tr.Ct.No. C1530742)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the judgment against **MAEBELLE YARBROUGH** in her capacity as Trustee of the Darrell Yarbrough Testamentary Trust be **reversed** and the cause **remanded** to the trial court **for further proceedings** consistent with this opinion; the remainder of the judgment is **affirmed**; and that all costs of this appeal are hereby adjudged against the Appellant, **MAEBELLE YARBROUGH,** in accordance with the opinion of this court; and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*